87 F.3d 1322
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
TENNECAL FUNDING CORPORATION; Tennecal Capital Resources,
Inc., Plaintiffs-Appellants,
v.
The SAKURA BANK, Defendant-Appellee.
 No. 94-56515.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 8, 1996.
Decided June 19, 1996.
 
 Before: GIBSON,* NOONAN and THOMPSON, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 * BACKGROUND
 
 
 3
 This dispute involves two promissory notes in the amount of 3,812,000,000 yen each. Kabushiki Kaisya Bunkosya (Bunkosya), a Japanese corporation, issued the notes in Japan, to be paid at the Kyobashi branch of a Japanese Bank. Despite prohibition on the export of Japanese promissory notes, plaintiffs, Tennecal Funding Corporation and Tennecal Capital Resources (collectively, Tennecal), two American corporations, were eventually assigned the notes in the United States and sought to collect on them. Sakura Bank refused to honor the notes because the original issuer of the notes, Bunkosya, had terminated its current account at Sakura Bank, and because Bunkosya, had "bounced" notes previously and had been suspended from banking transactions by the Tokyo Clearing House.
 
 
 4
 Plaintiffs brought suit against Sakura Bank in California state court. Sakura Bank removed the action to federal court on the basis of diversity jurisdiction and moved to dismiss the case under the doctrine of forum non conveniens. The district court found Japan to be the proper forum, and dismissed the case. This appeal followed.
 
 II
 DISCUSSION
 A. Standard of Review
 
 5
 "A party moving to dismiss on grounds of forum non conveniens must show two things: (1) the existence of an adequate alternative forum, and (2) that the balance of private and public interest factors favor dismissal." Lockman Found. v. Evangelical Alliance Mission, 930 F.2d 764, 767 (9th Cir.1991). "The forum non conveniens determination is committed to the sound discretion of the trial court. It may be reversed only when there has been a clear abuse of discretion." Piper Aircraft Co. v. Reyno, 454 U.S. 235, 257 (1981).
 
 B. Factual Determinations
 
 6
 Tennecal asserts the facts alleged in the complaint are deemed to be true for the purposes of a motion to dismiss for forum non conveniens. Sakura Bank disagrees. So do we.
 
 
 7
 In making the forum non conveniens determination, courts look to the parties' submissions of proof in support or in opposition to the motion. See, e.g., Piper Aircraft, 454 U.S. at 258 (although detailed offers of proof are unnecessary, a defendant must submit sufficient information to allow the court to balance the parties' interests); Van Cauwenberghe v. Baird, 486 U.S. 517, 529 (1988) (a motion to dismiss for forum non conveniens does not necessarily require extensive investigation, "and may be resolved on affidavits presented by the parties"). As these cases indicate, the facts as alleged in the complaint are not deemed to be true for the purposes of a motion to dismiss for forum non conveniens. See also Villar v. Crowley Maritime Corp., 782 F.2d 1478, 1479 (9th Cir.1986); Baris v. Sulpicio Lines, Inc., 932 F.2d 1540, 1550 & n. 14 (5th Cir.1991), cert. denied, 502 U.S. 963 (1991); Lacey v. Cessna Aircraft Co., 932 F.2d 170, 182 (3rd Cir.1991).
 
 
 8
 In the present case the district court relied on the verified complaint as well as various affidavits supplied by the parties in making its forum non conveniens determination. The court properly performed its factfinding function.
 
 C. Adequate Alternative Forum
 
 9
 "At the outset of any forum non conveniens inquiry, the court must determine whether there exists an alternative forum. Ordinarily, this requirement will be satisfied when the defendant is 'amenable to process' in the other jurisdiction." Piper Aircraft, 454 U.S. at 254 n. 22; Lockman, 930 F.2d at 768.
 
 
 10
 In this case the district court found Sakura Bank had consented to the jurisdiction of the Japanese courts. Given this uncontested fact, Japan could be considered an inadequate forum only if the remedy offered by Japanese courts is so clearly unsatisfactory that it is no remedy at all. Piper Aircraft, 454 U.S. at 254 & n. 22; Lockman, 930 F.2d at 768. That different substantive law might be applied and that the resulting remedies might be different are ordinarily not given substantial weight in the inquiry. Piper Aircraft, 454 U.S. at 247; Lockman, 930 F.2d at 768.
 
 
 11
 Tennecal argues Japan is not available to it as an alternative forum because Dan Geiger, Tennecal's CEO, would be in extreme personal danger from the Japanese Mafia if he went there. Personal difficulty, as opposed to a forum's systemic inadequacy, is not a proper factor for the court to consider when assessing the adequacy of an alternative forum. See, e.g., Mercier v. Sheraton Int'l, Inc., 981 F.2d 1345, 1351 n. 2 (1st Cir.1992), cert. denied, 508 U.S. 912 (1993); Rasoulzadeh v. Associated Press, 574 F.Supp. 854, 861 (S.D.N.Y.1983), aff'd, 767 F.2d 908 (2d Cir.1985). Japan provides an adequate alternative forum.
 
 D. Public Interest Factors
 
 12
 The public interest factors to be considered by the district court include: "court congestion, the local interest in resolving the controversy, and the preference for having a forum apply a law with which it is familiar." Lockman, 930 F.2d at 771. To properly evaluate the public interest factors the court is often required to first decide how the underlying issue ought to be conceptualized. Contact Lumber Co. v. P.T. Moges Shipping Co., 918 F.2d 1446, 1452 (9th Cir.1990). In this case, the district court's conceptualization of the underlying issues was particularly important to its evaluation of both the public interest and the private interest factors.
 
 
 13
 Although Tennecal brought suit under California law claiming to be a holder in due course of the promissory notes, the district court determined that Sakura Bank had alleged several defenses which Tennecal would have to overcome, including its assertions that (1) the notes were illegally exported from Japan and payment may be prohibited; (2) Sakura Bank had no obligation to make payment on the notes because Bunkosya had insufficient funds in its account; and (3) Sakura Bank had no obligation to make payment on the notes because Bunkosya had been suspended from banking transactions pursuant to the Rules of the Tokyo Clearing House. The district court concluded these assertions presented issues regarding the underlying transaction which had to be resolved before Tennecal's claims could be considered.
 
 
 14
 The district court also determined, and it is not disputed, that all the events pertaining to the issuance of the notes occurred in Japan: the issuer of the notes is a Japanese corporation; the notes are denominated in Japanese currency; the place of payment indicated on the notes is in Japan; and the bank is a Japanese corporation.
 
 
 15
 The issues regarding this underlying transaction must be analyzed under Japanese law. The witnesses to Sakura Bank's defenses are in Japan, and the relevant documents are in Japanese and located in Japan. Although the court noted that Tennecal has numerous witnesses in Los Angeles, the testimony of these witnesses would only become relevant if Tennecal could overcome Sakura Bank's defenses.
 
 
 16
 Tennecal does not appear to challenge the court's description of the underlying transaction, but attacks the court's conceptualization of the case which marginalizes Tennecal's case-in-chief. Tennecal argues this conceptualization of the case represents an inappropriate consideration of immaterial factors.
 
 
 17
 Tennecal argues Lockman is inapplicable because in that case the parties were already litigating the asserted defenses in Japan. We fail to see the significance of the distinction. In Lockman, the litigation between the parties in Japan only served to support the adequacy of Japan as an alternative forum. Here, the district court relied on Lockman because in Lockman, as in this case, the defenses to the plaintiff's claims were based on actions and events which took place in Japan. See Lockman, 930 F.2d at 770. Litigation regarding these defenses would apply Japanese law, and all the witnesses, documents, and underlying events pertaining to the defenses were in Japan. See Id. Lockman governs this case.
 
 
 18
 According to Tennecal, "[a]s a holder in due course, cutting off the assignor's defenses, Plaintiffs are not bound by the difficulties which Bunkosya may have had with Sakura Bank." The defenses, however, are potentially fatal to all of Tennecal's claims, including those in tort and contract. And, as the district court found, there is ample evidence to support these defenses.
 
 
 19
 Tennecal also argues the district court failed to recognize the "insignificance of foreign law." Tennecal does not appear to challenge the applicability of Japanese law to Sakura Bank's defenses. It argues the district court improperly focused on Sakura Bank's defenses because of its misinterpretation of Lockman. As explained above, the district court properly found Lockman applicable. The district court recognized that California law governed Tennecal's case-in-chief; it simply determined the importance of the case-in-chief was subordinate to Sakura Bank's defenses for the purposes of determining the convenience of the forum.
 
 
 20
 The district court's determination that the public interest factors favor dismissal is a reasonable balancing of those factors.
 
 E. Private Interest Factors
 
 21
 The relevant private interest factors include:
 
 
 22
 ease of access to sources of proof; compulsory process to obtain the attendance of hostile witnesses, and the cost of transporting friendly witnesses; and other problems that interfere with an expeditious trial.
 
 
 23
 Id. (quoting Contact Lumber, 918 F.2d at 1451). To this mixture must be added a degree of deference to a resident or citizen plaintiff's choice of home forum. See Piper Aircraft, 454 U.S. at 255-56; Lockman, 930 F.2d at 767.
 
 
 24
 a. American plaintiff's choice of forum.
 
 
 25
 A citizen or resident plaintiff deserves "somewhat more deference than foreign plaintiffs." Piper Aircraft, 454 U.S. at 256 n. 23. But this factor must be considered along with the others. "As always, if the balance of conveniences suggests that trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper." Id.
 
 
 26
 Sakura Bank argues Tennecal as the assignee, stands in the shoes of the assignor, and therefore Tennecal's status as an American corporation should be given no special deference. See Pain v. United Technologies Corp., 637 F.2d 775, 798 (D.C.Cir.1980), cert. denied, 454 U.S. 1128 (1981); Del Monte Corp. v. Everett Steamship Corp., 402 F.Supp. 237, 243 (N.D.Cal.1973). We disagree.
 
 
 27
 The notes were originally issued to White Star and White Star assigned them to Tennecal. White Star is an American corporation. Sakura Bank's argument therefore does not diminish the degree of deference due to Tennecal's choice of forum. The district court recognized that Tennecal's choice of forum was entitled to special deference; however, it concluded the balance of the conveniences strongly favored dismissal.
 
 
 28
 b. Ease of access to sources of proof.
 
 
 29
 The district court found that the entire underlying transaction took place in Japan, all the related documents are written in Japanese and located in Japan, and evidence of the underlying transaction would be supplied by witnesses located in Japan. The ease of access to sources of proof therefore strongly favor litigation in Japan.
 
 
 30
 Despite Tennecal's argument to the contrary, the district court considered Sakura Bank's presence and actions in the United States, as well as Tennecal's list of witnesses present in Los Angeles. The district court gave little weight to these facts because of its conclusion that the central issue revolved around the underlying transaction for which the Los Angeles witnesses would be irrelevant.
 
 
 31
 c. Cost of transporting witnesses
 
 
 32
 Tennecal argues the district court did not consider the extreme cost of transporting nearly of all of its witnesses to Japan. The court did consider this, it simply did not think transportation of Tennecal's witnesses would really be necessary.
 
 
 33
 d. Other practical problems of prosecution.
 
 
 34
 Tennecal argues that discovery will be inadequate in Japan and will entail higher costs because it will have to hire Japanese counsel and provide for translations. Although these are relevant factors to consider, the district court's balancing of them was not unreasonable. Under the district court's conception of the case, to litigate this matter in the United States would include high costs of transporting witnesses and documents from Japan, as well as translation costs.
 
 
 35
 One issue relevant to the private interest factors which the district court did not mention is Mr. Geiger's (Tennecal's CEO) fear of personal safety if he were to go to Japan. The evidence to substantiate this fear appears in the verified complaint and three affidavits. It is asserted that when Tennecal attempted to collect on one of the notes in London, Sakura Bank claimed the notes were fraudulent. As a result, Mr. Geiger, his secretary, and English counsel were arrested. They were detained for 13 hours, and the notes were detained for 72 hours. When Mr. Geiger was released, he states he "personally received information of threats to his life and that of his family by the Yukuza, the Japanese Mafia."
 
 
 36
 A significant threat to one's personal safety is a proper consideration when assessing the private interest factor of a plaintiff's practical problems of bringing suit in a particular forum. In the present case, however, the evidence offered to support the asserted threat to Mr. Geiger's person was inconclusive. The failure to accord substantial weight to Mr. Geiger's fear does not render the district court's balancing of the relevant factors an abuse of discretion.
 
 
 37
 The district court's dismissal on the basis of forum non conveniens is AFFIRMED.
 
 
 
 *
 Honorable Flyod R. Gibson, Senior Circuit Judge for the Eighth Circuit, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 36-3