*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0120p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

ESTATE OF WILLIAM R. BARNEY, JR.;
WILLIAM R. BARNEY, JR., TRUST; CAROLINE
G. BARNEY,

          *Plaintiffs-Appellants*,

      *v.*

PNC BANK, NATIONAL ASSOCIATION,

          *Defendant-Appellee*.

No. 12-3540

Appeal from the United States District Court
for the Northern District of Ohio at Cleveland.
No. 1:11-cv-00157—Solomon Oliver, Jr., Chief District Judge.

Argued: March 12, 2013

Decided and Filed: April 30, 2013

Before: MERRITT, MARTIN, and CLAY, Circuit Judges.

_____

## COUNSEL

**ARGUED:** Aparesh Paul, LEVIN & ASSOCIATES CO., L.P.A., Cleveland, Ohio, for Appellants. Lisa Babish Forbes, VORYS, SATER, SEYMOUR & PEASE, LLP, Cleveland, Ohio, for Appellee. **ON BRIEF:** Aparesh Paul, Joel Levin, LEVIN & ASSOCIATES CO., L.P.A., Cleveland, Ohio, for Appellants. Lisa Babish Forbes, Elizabeth Davis Conway, VORYS, SATER, SEYMOUR & PEASE, LLP, Cleveland, Ohio, for Appellee.

_____

## OPINION

_____

    BOYCE F. MARTIN, JR., Circuit Judge. The main issue in this case is whether Ohio law permits a principal to hold a bank liable for money that the principal entrusted a fiduciary to deposit at the bank and which the fiduciary then withdrew, without the principal's permission, and squandered. Unfortunately for the principals here, the

Barneys, the answer is no. Mr. Manning, a lawyer who served as the executor of Mr. Barney's estate and the trustee of a trust for Mrs. Barney, set up two bank accounts at National City Bank, one for the estate and one for the trust. He then wired funds, totaling about $1,250,000, from the bank accounts into the account of his business, Manning & Banks, Inc., in violation of his fiduciary duties. Manning's business failed, and Manning confessed to Mrs. Barney that he had absconded with the money from the two accounts. The estate, trust, and Mrs. Barney—the Barneys—sued Manning's law firm in state court, but the suit did not survive the firm's motion for summary judgment. The Barneys then sued PNC Bank, the successor to National City Bank, in state court to try to recover the money Mr. Manning stole. After the case was removed to district court, the Bank moved to dismiss the case, asserting the affirmative defense of Ohio's version of the Uniform Fiduciaries Act. The district court granted the motion. The Barneys have appealed, but because they failed, after the Bank invoked the Uniform Fiduciaries Act, to plead facts giving rise to an inference that the Bank committed any wrongdoing, we must **AFFIRM** the district court's order.

Because we are reviewing the district court's order of dismissal under Fed. R. Civ. P. 12(b)(6), we must accept as true the facts set out in the complaint. *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 535 (6th Cir. 2012).

According to the complaint, Mr. Manning, a lawyer, drafted Mr. Barney's trust for the sole benefit of Mrs. Barney after Mr. Barney's death. The trust appointed Manning as trustee and, when Mr. Barney died, directed Manning to distribute income periodically to Mrs. Barney. Mr. Barney died in 2007, leaving a net worth of over $3 million. Manning opened the estate in probate court and was named executor.

Manning opened a checking account for the Barney estate at National City Bank. The signature card that National City Bank required Manning to fill out to open the account stated that Manning was the executor of the estate and that he was opening a fiduciary account. When opening the estate account, Manning told the bank manager that he intended the account to be for the estate for which he was serving as executor.

Manning gave National City Bank documents from the probate court appointing him as executor of the estate.

Then, Manning, acting as trustee of the trust, opened another checking account at National City Bank, this time for the trust. The signature card that National City Bank required Manning to complete to open the account stated that Manning was the trustee of the trust and that the account was a trust account. When opening the trust account, Manning told the bank manager that he intended the account to be for the trust of which he was serving as trustee. Manning gave someone at National City Bank the trust agreement naming Manning as the successor trustee (after Mr. Barney's death) and listing the beneficiaries of the trust.

After opening each account, and throughout 2007 and 2008, Manning sent emails to National City Bank managers instructing them to wire money from the estate and trust accounts at National City Bank to the account of Manning & Banks, Inc., his company's account, at Regions Bank. The wire transfers varied from a low of $190 to a high of $125,000. Manning did not wire money to any other account except for his company's account. In total, over the course of about sixteen months, Manning wired about $1.25 million from the estate and trust accounts into his company's account.

National City Bank never contacted Mrs. Barney about Manning's transfers. In October 2008, Manning confessed to Mrs. Barney that he had invested her money in his own company with the plan of repaying her after his company began making money (which it never did).

Presumably because they were unable to recover from Manning, the Barneys first sued Manning's former employer, the law firm of McIntyre, Kahn & Kruse Co., LPA, in Ohio state court; but the trial court granted summary judgment in favor of the law firm, which the Eighth District Court of Appeals of Ohio affirmed. *Barney v. Manning*, No. 94947, 2011 WL 346293 (Ohio Ct. App. Feb. 3, 2011). National City Bank was voluntarily dismissed without prejudice. *Id.* at *1 n.1.

The Barneys then sued National City Bank (or rather PNC Bank, its successor), again in Ohio state court, and the Bank removed the case to federal district court. In their amended complaint, the Barneys asserted five claims for relief, but pursue only the following three on appeal.

First, the Barneys asserted a claim of "Negligence/Recklessness/Bad Faith" and argued that National City Bank owed them "a duty of care to keep safe from wrongful transfer or distribution" the funds in the estate and trust accounts. The Barneys alleged that National City Bank "knew or should have known" that the accounts were estate and trust accounts containing money for the Barneys' benefit, not for Manning's benefit. The Barneys further alleged that National City Bank knew or should have known that Manning's wiring of money from the estate and trust accounts into his company's account was unauthorized and wrongful. In the alternative, the Barneys alleged, National City Bank acted in bad faith "in disregarding or otherwise refusing to recognize" that Manning's wire transfer requests were improper.

Second, under the title of "Civil Aiding and Abetting Tortious Conduct," the Barneys alleged that National City Bank assisted Manning "by willfully disregarding the fact that Manning continued to use the Bank's facilities to divert wrongfully" the Barneys' funds and by continuing to allow Manning "to facilitate and accomplish his tortious activity."

In the third claim for relief, entitled "Negligent Supervision and Training," the Barneys alleged that National City Bank "failed to train, supervise, communicate or otherwise apprise its employees . . . on guidelines and standards of banking industry practices, including, without limitation, know your customer guidelines, certain reporting requirements and other practices, policies and procedures relevant to obtaining and servicing the Trust account." Because of this lack of training, the Barneys claimed, the Bank employees "failed to safeguard and secure" the Barneys' funds in the estate and trust accounts.

The Bank moved, under Fed. R. Civ. P. 12(b)(6), the district court to dismiss the complaint and argued that the Ohio Uniform Fiduciaries Act, Ohio Rev. Code sections

5815.01–.11, doomed the Barneys' claim for "Negligence/Recklessness/Bad Faith" and their claim for "Negligent Supervision and Training."  As for the Barneys' claim of "Civil Aiding and Abetting Tortious Conduct," the Bank argued that the Barneys had not pleaded facts demonstrating that the Bank knowingly aided and abetted Manning's tortious conduct, a necessary element of such a claim.  The district court granted the motion, and the Barneys appealed.

We review de novo a dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  *Courie v. Alcoa Wheel & Forged Prods.*, 577 F.3d 625, 629 (6th Cir. 2009). Under the United States Supreme Court's heightened pleading standard, a complaint only survives a motion to dismiss if it contains "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is plausible "'when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.'" *In re Harchar*, 694 F.3d 639, 644 (6th Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677) (parallel citations omitted).  While "the plausibility standard is not akin to a 'probability requirement,' the plausibility standard does ask for more than a sheer possibility that a defendant has acted unlawfully." *Iqbal*, 556 U.S. at 678 (citation omitted).  As the Supreme Court explained, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Id*. at 679 (quoting Fed. R. Civ. P. 8(a)(2)).

Accordingly, *Iqbal* demands that the Barneys have alleged in their complaint facts sufficient to allow the district court to draw a reasonable inference that the Bank acted unlawfully.  Because the Bank raised the affirmative defense of the Ohio Uniform Fiduciaries Act, specifically Ohio Rev. Code section 5815.07, for the Bank to have acted unlawfully, the Barneys must have pleaded facts allowing the district court to draw the reasonable inference that the Bank had either actual knowledge of Manning's breach of his fiduciary obligation or knowledge of such facts that its actions in paying the wire transfers amounted to bad faith.

The Barneys argue, for the first time on appeal, that the district court improperly allowed the Bank to invoke, at the motion-to-dismiss stage, the affirmative defense of the Ohio Uniform Fiduciary Act. The Bank counters both that it has "not been fully determined in Ohio courts" whether the Uniform Fiduciaries Act is an affirmative defense, and that the Barneys forfeited this argument because the Barneys failed to raise it before the district court.

In general, we will not review arguments or issues that a party raises for the first time on appeal. *DaimlerChrysler Corp. Healthcare Benefits Plan v. Durden*, 448 F.3d 918, 922 (6th Cir. 2006) (citing *Barner v. Pilkington N. Am., Inc.*, 399 F.3d 745, 749 (6th Cir. 2005); *Lepard v. NBD Bank*, 384 F.3d 232, 236 (6th Cir. 2004)). We must review the case presented to the district court, instead of a better case fashioned after a district court's unfavorable order. *Id.* (citing *Barner*, 399 F.3d at 749). We will not consider an error or issue which a party could have raised before the district court but did not. *Barner*, 399 F.3d at 749. Here, the Barneys could have argued to the district court that allowing the Bank to invoke the Uniform Fiduciaries Act as an affirmative defense at the motion-to-dismiss stage was improper. Yet we do apply two exceptions to the general rule that arguments not presented before the district court are forfeited on appeal; these two exceptions allow us to consider those issues not raised in the district court when: (1) the proper resolution is beyond doubt, or (2) a plain miscarriage of justice might otherwise result. *Id.* (citing *Lepard*, 384 F.3d at 236; *United States v. Ninety-Three (93) Firearms*, 330 F.3d 414, 424 (6th Cir. 2003)).

Here, it is beyond doubt both that the Ohio Uniform Fiduciaries Act is an affirmative defense and that a district court may base a motion to dismiss on an affirmative defense. First, there is no doubt that the Ohio Uniform Fiduciaries Act is an affirmative defense. The Ohio Supreme Court's decision in *Master Chemical Corp. v. Inkrott*, 563 N.E.2d 26 (Ohio 1990), indicates that section 5815.07 is an affirmative defense. The syllabus of *Inkrott* states that Ohio Rev. Code section 1339.09 (amended, without substantive changes, and recodified as Ohio Rev. Code section 5815.07) is a "defense" that a payee-bank may present in defending against a principal-plaintiff's

claim that the bank-defendant wrongfully paid a check to a fiduciary. *Id.* at 26–27. Generally, a syllabus cannot be cited as precedent; but, as the Ohio Supreme Court itself has stated, the opposite is true in Ohio: "it is well-established that the syllabus of an opinion issued by this court states the law of the case." *Smith v. Klem*, 450 N.E.2d 1171, 1173 (Ohio 1983) (citations omitted). Accordingly, as the Ohio Supreme Court has explained, the syllabus binds all lower Ohio courts "to adhere to the principles set forth therein." *Id.* (citation omitted). In addition to the syllabus, the *Inkrott* opinion further explains that section 5815.07 is an affirmative defense; the opinion states that section 5815.07 "provides a *defense*, when asserted under [Ohio] Civ. R. 8(C), for those who knowingly deal in good faith with an authorized fiduciary." *Id.* at 29 (emphasis added). The opinion's explicit reference to Ohio Civ. R. 8(C), entitled "Affirmative Defenses," provides further support for section 5815.07 being an affirmative defense. Ohio Civ. R. 8(C) states that a party, "[i]n pleading to a preceding pleading," must set forth affirmatively several enumerated affirmative defenses, as well as "any other matter constituting an avoidance or *affirmative defense*." (emphasis added). Therefore, *Inkrott* squarely holds that section 5815.07 is an affirmative defense.

Also beyond doubt is the proper resolution of the Barneys' forfeited argument that the district court should not have allowed the Bank to invoke an affirmative defense at the motion-to-dismiss stage. The Barneys argue that, because Ohio Revised Code section 5815.07 is an affirmative defense, the district court should not have granted the Bank's motion to dismiss, but should have required the Bank both to raise the defense in its responsive pleading, and to prove, by a preponderance of the evidence, its entitlement to the defense. The Barneys are correct that we have held that "[c]ourts generally cannot grant motions to dismiss on the basis of an affirmative defense unless the plaintiff has anticipated the defense and explicitly addressed it in the pleadings." *Pfeil v. State St. Bank & Trust Co.*, 671 F.3d 585, 599 (6th Cir. 2012) (footnote omitted) (citing *Hecker v. Deere & Co.*, 556 F.3d 575, 588 (7th Cir. 2009)).

Yet we have also held that "[t]here is no reason not to grant a motion to dismiss where the undisputed facts conclusively establish an affirmative defense as a matter of

law." *Hensley Mfg. v. Propride, Inc.*, 579 F.3d 603, 613 (6th Cir. 2009) (citing *In re Colonial Mortg. Bankers Corp.*, 324 F.3d 12, 16 (1st Cir. 2003)) (holding that a suit can be dismissed on the basis of an affirmative defense if the facts establishing the defense are "definitively ascertainable from the allegations of the complaint" and they "conclusively establish the affirmative defense"). For example, in *Marsh v. Genentech, Inc.*, 693 F.3d 546, 555 (6th Cir. 2012), we concluded that the plaintiff's complaint made clear that the plaintiff could not defeat the defendant's affirmative defense. We explained that "[a] motion to dismiss can be premised on an affirmative defense[,]" provided that "'the plaintiff's own allegations show that a defense exists that legally defeats the claim for relief.'" *Id.* at 554 (quoting 5B Charles Alan Wright and Arthur Miller, Federal Practice & Procedure § 1357, at 713 (3d ed. 2004)). So, if the plaintiffs' complaint contains facts which satisfy the elements of the defendant's affirmative defense, the district court may apply the affirmative defense.

Here, the facts that the Barneys pleaded showed that the Bank was entitled to invoke section 5815.07 as an affirmative defense. Section 5815.07 of Ohio's version of the Act states that "[i]f a check is drawn upon the principal's account by a fiduciary who is empowered to do so, the bank may pay the check without being liable to the principal[,]" unless one of two exceptions apply (as will be discussed below). Ohio Rev. Code Ann. § 5815.07 (West 2013). To determine whether a bank may use section 5815.07, Ohio law prescribes a two-part inquiry: "[t]he inquiry to be made is not only whether the bank had knowledge of the existence of the fiduciary relationship but also whether the fiduciary in fact possessed the authority to conduct the transaction in question." *Inkrott*, 563 N.E.2d at 30. For example, on the facts before it, *Inkrott* determined that the fiduciary had the authority to conduct the transactions at issue because the resolutions of the principal (a corporation) provided that Inkrott had the authority to withdraw funds and sign checks. *Id.* The court concluded that, based upon these resolutions, the bank knew that the company had empowered Inkrott to receive funds and to cosign checks, and that he was in fact empowered to do so. *Id.*

Here, under the first part of the inquiry, the Bank knew of the existence of the fiduciary relationship—between, on the one hand, Manning, as fiduciary, and, on the other hand, Mr. Barney's estate, trust and Mrs. Barney, as principals—because Manning filled out the bank's paperwork (the signature cards) indicating that he was the executor of the estate and trustee of the trust when he opened the estate and trust accounts. We must also answer the second part of the inquiry—whether Manning did in fact possess the authority to withdraw money from the accounts—affirmatively because the Barneys' complaint states that Manning was the executor and trustee. Therefore, Manning had the authority to withdraw money from the accounts given his position, just as the fiduciary in *Inkrott* had the authority to withdraw funds based on the corporation's resolutions. The Barneys' allegations in their complaint showed that they could not defeat the Bank's defense under section 5815.07; the facts showed that the Bank dealt with Manning knowing him to be a fiduciary, and that he served as a fiduciary, as the executor of the estate and the trustee of the trust. Therefore, the district court did not err in determining that the affirmative defense of section 5815.07 applied at the motion-to-dismiss stage.

The effect of section 5815.07 is to assign the risk that a fiduciary might defraud a principal to the principal instead of to a third party (like a bank); as *Inkrott* explains, the purposes of the Uniform Fiduciaries Act is "to protect those who honestly deal with another knowing him to be a fiduciary and to place the responsibility of employing honest fiduciaries on the principal." *Id.* The Supreme Court of Ohio has explained that the Uniform Fiduciaries Act was developed "to facilitate commercial transactions" by "relieving those who deal with authorized fiduciaries from the duty of ensuring that entrusted funds are properly utilized for the benefit of the principal by the fiduciary." *Id.* at 29. The Court explained that the Act relaxes the common law rules that formerly required a bank to exercise the highest degree of vigilance to detect a fiduciary's wrongdoing. *Id.*

Here, therefore, under the Act, the Bank had no duty to ensure that the "entrusted funds [were] properly utilized for the benefit of the principal [Mrs. Barney] by the

fiduciary [Manning]." *Inkrott*, 563 N.E.2d at 29. Nor did the Bank have a duty to "exercise the highest degree of vigilance in the detection of [Manning's] wrongdoing." *Id.*

Because the Bank was entitled to use section 5815.07 as a defense, the only way that the Barneys could have survived a motion to dismiss would have been to plead facts allowing the district court to draw a reasonable inference that the Bank acted with actual knowledge of Manning's breach of his fiduciary duties or with knowledge of such facts surrounding his behavior that its actions in paying the checks constituted bad faith. Under Ohio law where, as here, "the bank presents the defense that it dealt with an individual knowing him to be a fiduciary," for the plaintiff to "successfully maintain a cause of action," it must make one of three factual showings. *Id.* at 30. Two of these factual showings are germane to the fact pattern here. First, to hold the bank liable, the plaintiff could prove that "the bank had actual knowledge of the fiduciary's breach of the fiduciary obligation[;]" or, second, the plaintiff could prove "that the bank had knowledge of such facts that its actions in paying the checks amounted to bad faith[.]" *Id.* (citing Ohio Rev. Code Ann. § 1339.09; now Ohio Rev. Code Ann. § 5815.07)

The Barneys failed to plead facts showing that the Bank had actual knowledge that Manning was defrauding them. The Ohio Supreme Court has defined actual knowledge in this context as "awareness at the moment of the transaction that the fiduciary is defrauding the principal." *Id.* at 30. This means that the bank must have "express factual information that the funds are being use for private purposes in violation of the fiduciary relationship." *Id.* at 30–31 (citation omitted).

Here, then, to hold the Bank liable, the Barneys must have pleaded sufficient facts to allow the inference that the Bank had unambiguous factual information, at the moment that Manning requested the wire transfers, that Manning was using the funds for his own purposes in violation of the fiduciary relationship. The Barneys pleaded no such facts in their complaint, even after they amended it. Therefore, the Barneys cannot establish that the Bank had actual knowledge that Manning breached his fiduciary obligations.

Nor can the Barneys show that the Bank acted in bad faith. In *Inkrott*, the Ohio Supreme Court noted that the Act does not define "bad faith." *Id.* at 31. But, the Court also noted, the Act does define "good faith" as including "an act when it is in fact done honestly." *Id.* (citing Ohio Rev. Code § 1339.03(E) (recodified and amended as Ohio Rev. Code § 5815.04)). The Ohio Supreme Court quoted approvingly the United States Court of Appeals for the Seventh Circuit's statement that, to find that the bank acted in bad faith, a court must ask "whether it was commercially unjustifiable for the payee to disregard and refuse to learn facts readily available." *Id.* (citing *Appley v. West*, 832 F.2d 1021, 1031 (7th Cir. 1987)) (internal quotations omitted). To find that a bank acted in bad faith, the Ohio Supreme Court added, "[t]he facts and circumstances must be so cogent and obvious that to remain passive would amount to a deliberate desire to evade knowledge because of a belief or fear that inquiry would disclose a defect in the transaction." *Id.* (quoting *Gen. Ins. Co. of Am. v. Commerce Bank of St. Charles*, 505 S.W.2d 454, 456–57 (Mo. Ct. App. 1974)) (rest of citation omitted). The Ohio Supreme Court also noted that "bad faith has also been defined as that which imports a dishonest purpose and implies wrongdoing or some motive of self-interest." *Id.* (internal quotations and citations omitted).

Here, again, the Barneys failed—even after amending their complaint—to plead facts suggesting that the circumstances of Manning's wire transfers were so cogent and obvious that the Bank's remaining passive amounted to bad faith. The Barneys alleged only that Manning wired the money to his company's account, a fact that does not obviously show that Manning was engaged in wrongdoing; after all, Mrs. Barney could have had an agreement with Manning to invest money into his company.

Under *Iqbal*, then, the Barneys have not pleaded facts sufficient to make either showing. Nor did they ask to amend their complaint to include such facts after the Bank invoked the affirmative defense of section 5815.07. Therefore, the district court did not err in granting the motion to dismiss their claims for "Negligence/Recklessness/Bad Faith."

Nor did the district court err in dismissing the Barneys' claim for "Civil Aiding and Abetting Tortious Conduct," because it is highly doubtful that Ohio even recognizes such a tort. *See DeVries Dairy, L.L.C. v. White Eagle Coop. Ass'n, Inc.*, 974 N.E.2d 1194, 1194 (Ohio, 2012). Even if this tort existed in Ohio, such a claim would require a showing of "actual knowledge" or "general awareness" of the primary party's wrongdoing. *Pavlovich v. Nat'l City Bank*, 435 F.3d 560, 570 (6th Cir. 2006). As the district court held, the Barneys' complaint was "devoid of factual allegations from which the court can reasonably infer that PNC [National City Bank] was generally aware of Manning's tortious conduct[.]" Therefore, under *Iqbal*, the district court did not err in dismissing this claim.

Finally, the district court did not err in dismissing the Barneys' third claim, for "Negligent Supervision and Training," because the Barneys' complaint provided "only conclusory allegations and a recital of the elements of a claim for negligent supervision and training[,]" and failed to allege any facts "that may satisfy the plausibility standard" from *Iqbal*.

Ohio law requires that a plaintiff prove the following five elements to impose liability upon an employer for a claim of negligent hiring, supervision and retention: (1) the existence of an employment relationship; (2) the employee's incompetence; (3) the employer's knowledge of the employee's incompetence; (4) the employee's act or omission causing the plaintiff's injuries; and (5) a causal link between the employer's negligence in hiring, supervising, and retaining the plaintiff's injuries. *Lehrner v. Safeco Ins./American States Ins. Co.*, 872 N.E.2d 295, 305 (Ohio Ct. App. 2007) (citation omitted).

Here, the Barneys simply pleaded no facts that would go towards proving any of these elements. Therefore, the district court did not err in dismissing this claim.

The sheer possibility exists that the Bank acted in a way that would have allowed the Barneys to hold it liable for Manning's theft. Discovery would have allowed the Barneys to determine if this sheer possibility could have been an actuality. But under *Iqbal*, a complaint cannot survive a motion to dismiss—and plaintiffs cannot get

discovery—unless the complaint shows that the defendant's wrongdoing is plausible, not just possible. Because the Barneys' complaint lacks any factual basis to hold the Bank liable, we **AFFIRM** the district court's judgment.