RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 25a0172p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

---

VCST INTERNATIONAL B.V., a Belgian private limited company, dba VCST IP Mexican Branch,

　　　　　　　　　*Plaintiff-Appellant*,

　　　*v.*

BORGWARNER NOBLESVILLE, LLC, a Delaware limited-liability company; BORGWARNER, INC., a Delaware Corporation, dba BorgWarner PowerDrive Systems,

　　　　　　　　　*Defendants-Appellees*.

No. 24-1791

---

Appeal from the United States District Court for the Eastern District of Michigan at Detroit.
No. 2:23-cv-12798—Jonathan J.C. Grey, District Judge.

Argued:  May 1, 2025

Decided and Filed:  June 30, 2025

Before:  MOORE, GIBBONS, and MURPHY, Circuit Judges.

---

## COUNSEL

**ARGUED:**  Jason D. Killips, BROOKS WILKINS SHARKEY & TURCO, Birmingham, Michigan, for Appellant.  Adam T. Ratliff, WARNER NORCROSS + JUDD LLP, Detroit, Michigan, for Appellees.  **ON BRIEF:** Jason D. Killips, Andrew B. Fromm, T.L. Summerville, BROOKS WILKINS SHARKEY & TURCO, Birmingham, Michigan, for Appellant.  Adam T. Ratliff, Michael G. Brady, Laura N. You, Ashley Racette, WARNER NORCROSS + JUDD LLP, Detroit, Michigan, for Appellees.

—————————

**OPINION**

—————————

MURPHY, Circuit Judge.  Contracts often contain forum-selection clauses so that parties may litigate any eventual dispute in the most efficient venue and obtain certainty over that location.  Yet this case shows that forum-selection clauses can disserve these efficiency and predictability goals if the parties do not sign clear agreements that unambiguously identify when the clauses apply.  The plaintiff in this case agreed to ship a car part that it made in Mexico to a Mexican plant that the defendants operated.  Their initial contract documents contained a forum-selection clause pointing to a Mexican venue.  So when the plaintiff sued in Michigan, the defendants moved to dismiss the suit under Federal Rule of Civil Procedure 12(b)(6) and the forum non conveniens doctrine.  The district court granted the Rule 12(b)(6) motion and did not undertake any forum non conveniens analysis.  But the complaint plausibly alleges that the parties switched to a Michigan forum-selection clause during the course of their transactions.  A factual dispute thus exists over which of these competing clauses applies to the plaintiff's breach-of-contract claims.  And we cannot resolve this venue issue on the pleadings under Rule 12(b)(6) or under the forum non conveniens doctrine without factual findings.  We thus reverse and remand for further proceedings.

I

At a high-level view, this case involves a simple set of transactions: an auto supplier agreed to make certain parts (pinions) at its plant in Mexico and ship them to another auto supplier's Mexico plant for the manufacture of different parts (transmissions).  But the transactions are shrouded in complexity because the parties and their affiliates have confusingly similar names that have changed over time.  So we begin by describing the entities on both sides of the transactions.

Start with the seller side.  VCST International B.V. (a Belgian limited liability company) used to be known as VCST Industrial Products B.V. and does business as "VCST IP Mexican Branch."  Appellant's Br. 9; Am. Compl., R.21, PageID 444.  We will refer to this entity simply

as "VCST." VCST makes "high-precision gears and pinions" for vehicles. Am. Compl., R.21, PageID 447. It has a Mexican subsidiary named VCST de Mexico S. de R.L. de C.V., which we will call "VCST de Mexico" for short. During the relevant time, VCST de Mexico made and sold pinions from a plant in Mexico. Quote, R.25-4, PageID 728. It did not join this suit.

Turn to the purchaser side. BorgWarner, Inc. (a Delaware company with its principal place of business in Michigan) makes vehicle transmissions. Am. Compl., R.21, PageID 444–45, 447. We will call this company "BorgWarner" for short. During the relevant time, BorgWarner made transmissions at a different plant in Mexico for three of Ford Motor Company's electric-vehicle programs. *Id.*, PageID 448. BorgWarner operated its Mexico plant through a subsidiary that once went by BorgWarner PDS (Anderson), LLC, but that now goes by BorgWarner Noblesville LLC. Appellant's Br. 9 n.1; Appellees' Br. 4–5. We will call this subsidiary "BW Noblesville." Lastly, some documents refer to a seemingly distinct BorgWarner subsidiary named "BorgWarner PDS (USA) Inc." with another place of business in Mexico. Addendum No. 1, R.25-3, PageID 718. According to VCST's complaint, it did not sue this entity. Am. Compl., R.21, PageID 439.

To make the Ford transmissions at the Mexico plant, BorgWarner needed to obtain the necessary parts. In November 2018, "BorgWarner PowerDrive Systems" and VCST signed a "Letter of Intent" indicating that BorgWarner PowerDrive Systems would buy a certain number of pinions from VCST each year. Letter, R.21-3, PageID 501–02. The parties dispute whether "BorgWarner PowerDrive Systems" refers to BorgWarner itself or BW Noblesville. Appellant's Br. 12 n.3. Because this case arises from a motion to dismiss, we will assume the complaint's claim that the name refers to BorgWarner. Am. Compl., R.31, PageID 438, 444–45. The Letter of Intent stated: "Any legal obligations between the parties shall be only those set forth in an executed Purchase Order with Terms and Conditions[.]" Letter, R.21-3, PageID 501. That statement was followed by a now-inoperable hyperlink to BorgWarner's website: "https://cdn.borgwarner.com/docs/default-source/suppliers/supplier-terms/potcs--mexico-english.pdf." *Id.*; Am. Compl., R.31, PageID 450.

BorgWarner's basic "Purchase Order Terms and Conditions" vary by country. The company asserts (without evidence) that the Letter of Intent's now-inoperable link would have

taken an individual who clicked on it to its Mexico Purchase Order Terms and Conditions (what we will call the "BW Mexico Terms"). Appellee's Br. 6–7. These terms contained choice-of-law and venue provisions that directed the parties to Mexican law and a Mexican venue:

> This Purchase Order is to be construed according to the Federal laws of Mexico, without regard to its conflicts of law principles. . . . Seller agrees that the forum and venue for any legal action or proceeding concerning this Purchase Order and for the interpretation and compliance of this Purchase Order, the parties expressly submit to the jurisdiction of the competent Federal courts sitting in Mexico City, and expressly waive their rights to any other jurisdiction that could correspond to them as a consequence of their domiciles or of any other reason.

BW Mexico Terms, R.25-2, PageID 716. By comparison, BorgWarner's United States Purchase Order Terms and Conditions (what we will call the "BW U.S. Terms") incorporated "the law of the State of Michigan" and directed "any legal action" about a Purchase Order to "the appropriate federal or state courts in" that State. BW U.S. Terms, R.21-2, PageID 498.

A few weeks after the parties executed the Letter of Intent, "BorgWarner PDS (USA) Inc." and VCST de Mexico entered a contract that they entitled "Addendum No. 1." Addendum No. 1, R.25-3, PageID 718–23. This addendum modified some of the BW Mexico Terms referred to in the Letter of Intent. *Id.*, PageID 718. It indicated that those modified terms "shall govern with respect to Buyer's Purchase Order Number <u>TBD</u>, dated <u>TBD</u>; BEV pinion gear project, as described in the [Letter of Intent] dated 11/29/2018." *Id.* Apart from its express amendments, the addendum made clear that all other BW Mexico Terms "remain unchanged." *Id.* It also included an identical choice-of-law and venue provision pointing to Mexican law and a Mexican venue. *Id.*, PageID 722. VCST alleges that BorgWarner PDS (USA) Inc. "had no later involvement in the parties' commercial relationship." Am. Compl., R.21, PageID 439.

Between 2019 and 2022, the parties conducted their pinion transactions through a series of Quotes and Award Letters, followed by the actual Purchase Orders. The Quotes came from VCST (not its Mexican affiliate, VCST de Mexico). *See, e.g.*, Quotes, R.25-4 to R.25-5, PageID 724–36; R.25-8 to R.25-9, PageID 742–55. They stated that they were "[s]ubject to agreed Terms & Conditions with BorgWarner Purchasing." *Id.*, PageID 727, 733, 744, 752.

In response, BorgWarner issued five Award Letters accepting VCST's Quotes with several additional terms. Letters, R.21-6 to R.21-10, PageID 512–29. The first two Award Letters (issued in 2019) stated that "Addendum No. 1 to the Purchase Order Terms & Conditions applies." Letters, R.21-6 to R.21-7, PageID 513, 515. These letters listed VCST's subsidiary operating the Mexico pinion plant (VCST de Mexico) as the "Supplier" with an address in Mexico. *Id.*

But BorgWarner's three later Award Letters (issued in 2021 or 2022) did not refer to Addendum No. 1. *See id.*, R.21-8 to R.21-10, PageID 518, 522, 526. These Award Letters instead stated that BorgWarner and VCST agreed to "adhere to the BW Supplier Manual and BW Purchase Order Terms and Conditions." *Id.* The letters did not identify any *country*-specific terms. They also changed the name of the "Supplier" from VCST de Mexico to VCST. *See id.* VCST allegedly asked for this change for tax and tariff reasons. Am. Compl., R.21, PageID 451.

BW Noblesville issued the Purchase Orders. *See* Orders, R.21-4 to R.21-5, PageID 508–11; R.26-7 to R.26-13, PageID 838–52. This company (which listed its location as Noblesville, Indiana) sent the Purchase Orders to VCST and identified its Belgium address. *Id.* Most of the later versions of the Purchase Order also included a disclaimer: "This Purchase Order and any underlying Releases are solely governed by and subject to the BorgWarner Purchase Order Terms and Conditions of the country in which the ordering BorgWarner entity seat [sic] . . . which are incorporated into this Purchase Order and all Releases by this reference[.]" Purchase Order, R.26-12, PageID 850. It continued: "[A]ny other different or additional terms proposed by Supplier [VCST] are deemed material and are objected to and rejected by BorgWarner unless specifically agreed to in writing signed by an authorized representative of BorgWarner." *Id.*

Over the course of the parties' relationship, BorgWarner made repeated "uplift" requests asking VCST to increase the number of pinions that it supplied. Am. Compl., R.21, PageID 440, 449, 453–54, 457. These increased demands required VCST to incur substantial costs (over $21 million) to expand its Mexico plant's production capacity. *Id.*, PageID 457–60.

In June 2022, however, BorgWarner notified VCST that it was cancelling all orders for one of Ford's three electric-vehicle programs.  *Id.*, PageID 460.  BorgWarner explained that Ford had decided to take the "program in house."  *Id.*  In the aftermath of this decision over the next year, BorgWarner allegedly breached the parties' contracts in several ways.  *Id.*, PageID 461–63.

In July 2023, the parties negotiated a settlement of some of VCST's breach-of-contract claims.  *Id.*, PageID 464.  Two months later, though, BorgWarner suddenly halted all its pinion orders under the Ford electric-vehicle programs.  *Id.*, PageID 465.  This decision left VCST with "millions of dollars" in completed and partially completed pinions.  *Id.*  BorgWarner also purportedly refused to pay for other pinions that VCST had already shipped.  *Id.*, PageID 466–67.

VCST sued BorgWarner and BW Noblesville in a Michigan district court seeking over $28 million in damages.  *See id.*, PageID 437–38.  VCST alleged five counts: a breach-of-contract claim under Michigan common law; a claim that the defendants breached a requirements contract under Michigan Compiled Laws § 440.2306; a claim that they breached their stated estimates under the same law; a claim for breach of the settlement agreement under Michigan common law; and a claim for unjust enrichment or quantum meruit under that law. *See id.*, PageID 475–84.

BorgWarner and BW Noblesville moved to dismiss the complaint on two grounds.  They first argued that the court should dismiss the suit under Federal Rule of Civil Procedure 12(b)(6) because the forum-selection clause in the BW Mexico Terms required VCST to sue in Mexico. They next argued that the court should also dismiss the suit under the doctrine of forum non conveniens.  The district court agreed with the first argument and dismissed the suit without considering the second one.  *See VCST Indus. Prods., B.V. v. BorgWarner, Inc.*, 2024 WL 5003522, at *3, *5 & n.2 (E.D. Mich. Aug. 19, 2024).

II

A

BorgWarner and BW Noblesville sought to enforce the forum-selection clause in the BW Mexico Terms through two vehicles: a motion to dismiss under Rule 12(b)(6) and a motion to dismiss under the forum non conveniens doctrine. These different motions follow different rules. And the specific route the district court took to its dismissal matters to our standard of review at this stage. So we begin by differentiating the two types of motions.

*Rule 12(b)(6) Motions*. The Supreme Court has left open whether parties may enforce a forum-selection clause under Rule 12(b)(6) on the ground that the plaintiff has failed to "state a claim upon which relief can be granted" *in the chosen forum*. Fed. R. Civ. P. 12(b)(6); *see Atl. Marine Constr. Co. v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 61 (2013). Our cases seem to permit the approach. *See Wilson v. 5 Choices, LLC*, 776 F. App'x 320, 326 (6th Cir. 2019); *Smith v. Aegon Cos. Pension Plan*, 769 F.3d 922, 933–34 (6th Cir. 2014); *Langley v. Prudential Mortg. Cap. Co.*, 546 F.3d 365, 369 (6th Cir. 2008) (per curiam).

If a defendant takes this path, though, it triggers Rule 12(b)(6)'s usual framework. District courts may grant a motion under Rule 12(b)(6) only if a complaint does not state a "plausible" claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). When evaluating a complaint's plausibility, courts must accept its factual allegations as true and draw "all reasonable inferences in" the plaintiff's favor. *Rudd v. City of Norton Shores*, 977 F.3d 503, 511 (6th Cir. 2020). They also must restrict their review to the "four corners" of the complaint and a limited set of other materials, such as documents that the complaint refers to and depends on. *See Blackwell v. Nocerini*, 123 F.4th 479, 486–87 (6th Cir. 2024). And if a district court grants the motion, appellate courts review whether the complaint stated a plausible claim de novo. *See Rudd*, 977 F.3d at 511.

When a defendant relies on an affirmative defense (like a forum-selection clause) to dismiss a complaint under Rule 12(b)(6), the framework becomes more nuanced. *Cf. Mills v. Anadolu Agency NA, Inc.*, 105 F.4th 388, 400–01 (D.C. Cir. 2024). A complaint need not plead factual allegations to plausibly avoid an affirmative defense. *See Jones v. Bock*, 549 U.S. 199,

211–15 (2007); *Coleman v. Hamilton Cnty. Bd. of Cnty. Comm'rs*, 130 F.4th 593, 607 (6th Cir. 2025); *Est. of Barney v. PNC Bank, Nat'l Ass'n*, 714 F.3d 920, 926 (6th Cir. 2013); 5B Charles A. Wright et al., *Federal Practice and Procedure* § 1357, at 436 (5th ed. 2024). But courts may still grant a motion to dismiss based on an affirmative defense if the complaint's allegations (or any other documents that we may consider at this stage) show as a matter of law that the defense applies. *See Bock*, 549 U.S. at 215; *Est. of Barney*, 714 F.3d at 926.

*Forum Non Conveniens Motions.* The Supreme Court has, by comparison, left no doubt that parties may enforce a forum-selection clause under the common-law doctrine of "forum non conveniens." *See Atl. Marine Constr.*, 571 U.S. at 60–61. The doctrine gives district courts discretion to dismiss a suit if a more convenient venue exists. *See Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 429 (2007). District courts typically consider three factors to decide whether the doctrine applies. *See Hefferan v. Ethicon Endo-Surgery Inc.*, 828 F.3d 488, 492 (6th Cir. 2016). They first identify the "degree of deference" to give to a plaintiff's chosen forum. *Id.* They then ask if the defendant has shown that "an adequate alternative forum" exists. *Id.* They lastly balance various "public and private interests" to choose between these venues. *Id.* If the parties have included a valid forum-selection clause in their contract, these factors usually should lead a court to pick the venue that the clause identifies. *See Atl. Marine Constr.*, 571 U.S. at 62–63; *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 311 (6th Cir. 2024).

The procedural rules for deciding motions under the forum non conveniens doctrine are far less clear than those governing motions under Rule 12(b)(6). Other circuit courts have suggested that district courts need not stick to the four corners of the complaint and can consider other evidence that the parties submit with the motion. *See, e.g.*, *Unitednet Ltd. v. Tata Commc'ns Am., Inc.*, 112 F.4th 1259, 1263 n.1 (10th Cir. 2024); *Usme v. CMI Leisure Mgmt., Inc.*, 106 F.4th 1079, 1083 (11th Cir. 2024); *Tennecal Funding Corp. v. Sakura Bank*, 1996 WL 341957, at *1 (9th Cir. June 19, 1996); *Alcoa S. S. Co. v. M/V Nordic Regent*, 654 F.2d 147, 149 (2d Cir. 1980) (en banc). But these courts have also suggested that they will accept the complaint's allegations as true if the allegations do not conflict with any evidence or if the district court resolves the motion without an evidentiary hearing. *See, e.g.*, *Unitednet*, 112 F.4th

at 1263 n.1; *Usme*, 106 F.4th at 1083; *Martinez v. Bloomberg LP*, 740 F.3d 211, 216–17 (2d Cir. 2014); *Carijano v. Occidental Petroleum Corp.*, 643 F.3d 1216, 1222 (9th Cir. 2011).

Conversely, our standard of review for these motions is quite clear.  We review the district court's analysis of initial contract questions (for example, the applicability or enforceability of a forum-selection clause) de novo.  *Firexo*, 99 F.4th at 311 (quoting *Lakeside Surfaces, Inc. v. Cambria Co., LLC*, 16 F.4th 209, 215 (6th Cir. 2021)).  On the other hand, we give "substantial deference" to the district court's forum non conveniens balancing and will reverse only if the court abuses its discretion.  *Prevent USA Corp. v. Volkswagen AG*, 17 F.4th 653, 658 (6th Cir. 2021) (quoting *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 257 (1981)).

Here, the district court relied on the first of these paths: it granted a motion to dismiss under Rule 12(b)(6) rather than under the forum non conveniens doctrine.  *See VCST*, 2024 WL 5003522, at *5 & n.2.  We thus need not consider the proper procedures for forum non conveniens motions.  Instead, we will apply the well-worn framework for resolving a motion to dismiss under Rule 12(b)(6).  In other words, we must ask only whether VCST has stated a "plausible" claim in Michigan rather than Mexico.  *Twombly*, 550 U.S. at 570.  We will also accept its complaint's factual allegations as true and consider only the outside-the-complaint evidence that the complaint refers to and depends on.  *See Blackwell*, 123 F.4th at 486–87; *Rudd*, 977 F.3d at 511.  On that score, the parties refer to several outside-the-complaint documents (including the Quotes, BW Mexico Terms, and Addendum No. 1).  Yet the parties seem to agree that we may consider most of these documents now.  So, with one exception that we will explain later, we assume that the documents satisfy our motion-to-dismiss standards.  Finally, we must review the district court's dismissal de novo rather than with some deference.  *See Rudd*, 977 F.3d at 511.

B

We consider two factors to determine whether a forum-selection clause can defeat a plaintiff's decision to sue in a different venue.  *See Firexo*, 99 F.4th at 322–23, 326.  We must consider *both* whether the clause applies to the dispute at hand *and* whether the clause is enforceable against the opposing party.  *See id.*  VCST does not dispute that courts could *enforce*

the forum-selection clause in the BW Mexico Terms.  But it says that this clause (which points to a Mexican forum) does not *apply* to the breach-of-contract claims in this suit.  Rather, it argues that the BW U.S. Terms (which point to a Michigan forum) apply instead.  VCST thus raises an ordinary question of contract interpretation about the meaning of the parties' agreements.

To answer the question, we must first identify the law that governs the contract dispute. *See id.* at 326.  In a diversity suit like this one, we apply the "choice-of-law rules" from the State in which the district court sits (here, Michigan).  *AtriCure, Inc. v. Meng*, 12 F.4th 516, 525 (6th Cir. 2021).  Both parties agree that Michigan courts would pick Michigan contract law (not Mexican contract law) to resolve whether the parties agreed to the BW U.S. Terms or the BW Mexico Terms.  We thus may assume that Michigan courts would rely on Michigan law.  *See id.*

Under Michigan's ordinary contract-law rules, courts must give effect to the intent of the parties to the agreement.  *See Shay v. Aldrich*, 790 N.W.2d 629, 637 (Mich. 2010).  If a contract contains unambiguous language, the courts must follow it as the authoritative evidence of the parties' intent.  *See id.*  If, by contrast, the contract contains ambiguities, courts may consider outside-the-contract evidence to determine what the parties intended.  *See id.*; *see also Kendzierski v. Macomb County*, 931 N.W.2d 604, 612 (Mich. 2019).  (Neither party suggests that any specialized contract-law rules—such as those governing a "battle of the forms"—should apply in this case.  So they have forfeited any contrary claim at this stage.  *Cf. BorgWarner Thermal Sys., Inc. v. Carlisle Brake & Friction, Inc.*, 847 F. App'x 272, 275–76 (6th Cir. 2021).)

Applying Michigan contract law here and drawing all reasonable inferences in VCST's favor, we conclude that VCST has stated a "plausible" claim that the BW U.S. Terms (and their Michigan forum-selection clause) govern.  *Twombly*, 550 U.S. at 570; *see Rudd*, 977 F.3d at 511.  As a general matter, the parties did not have a "universal" contract to govern their relationship.  Rather, they refer to a series of documents, including a Letter of Intent, an Addendum No. 1, Quotes, Award Letters, and Purchase Orders.  Many of these documents changed over time.  Some also conflict with each other—a clear sign of ambiguity in the parties' agreements.  *See Kendzierski*, 931 N.W.2d at 611; *Klapp v. United Ins. Grp. Agency, Inc.*, 663 N.W.2d 447, 453 (Mich. 2003).  At this stage, then, we cannot say that BorgWarner has established that the BW Mexico Terms apply "as a matter of law."  *Est. of Barney*, 714 F.3d at 926 (citation omitted).

As a specific matter, one could plausibly read BW Noblesville's Purchase Orders as choosing a Michigan venue. Those orders indicated that they were "solely governed by and subject to the BorgWarner Purchase Order Terms and Conditions of the country in which the ordering BorgWarner entity seat [sic]" (a typo that we take to mean "sits"). Purchase Order, R.21-5, PageID 511. Because the Purchase Order identifies BW Noblesville (an entity based in Indiana) as the ordering party, this language plausibly suggests that it incorporates the BW U.S. Terms.

Next, one could read BorgWarner's Award Letters as choosing the BW U.S. Terms. To be sure, the first two letters incorporated Addendum No. 1, which pointed the parties to the BW Mexico Terms. Letters, R.21-6 to R.21-7, PageID 513, 515. Yet the later three letters excluded this reference and said instead that the parties agreed to "adhere to the BW Supplier Manual and BW Purchase Order Terms and Conditions." Letters, R.21-8 to R.21-10, PageID 518, 522, 526. VCST alleges that the parties deliberately deleted this reference. Am. Compl., R.21, PageID 446, 450. Yet these later letters did not incorporate any specific country's terms. So VCST turns to BorgWarner's website. The website reiterated what the Purchase Orders noted: that "[t]he particular country's Terms and Conditions that apply to a purchase order will be determined by the country in which the ordering BorgWarner entity has its seat." Terms, R.26-6, PageID 833. Since BorgWarner (a U.S. company) issued the Award Letters, this fact also plausibly suggests that those terms applied.

Finally, VCST plausibly suggests that Addendum No. 1—the primary document that incorporates the BW Mexico Terms—did not even apply to the parties to this suit. "BorgWarner PDS (USA) Inc." and VCST de Mexico entered this addendum. Addendum No. 1, R.25-3, PageID 718–23. VCST de Mexico did not file the suit with VCST. And we have little information about "BorgWarner PDS (USA) Inc." The complaint suggests that this entity "had no later involvement in the parties' commercial relationship" after the addendum. Am. Compl., R.21, PageID 439.

Admittedly, BorgWarner has reasonable responses. Of most note, the Letter of Intent and Addendum No. 1—arguably the two main documents about the parties' overarching relationship—pointed to the BW Mexico Terms. BorgWarner also notes that the Purchase

Orders on which VCST primarily relies made clear that "additional terms proposed by Supplier" could bind BorgWarner if the terms were "specifically agreed to in writing signed by an authorized representative of BorgWarner." Purchase Order, R.21-5, PageID 511. BorgWarner claims that it signed such "additional terms" when it agreed to Addendum No. 1. BorgWarner also suggested at oral argument that BorgWarner PDS (USA) is not a distinct entity and that Addendum No. 1 merely referred to BorgWarner (or BW Noblesville). It adds that VCST de Mexico assigned its rights under the addendum to VCST when VCST asked BorgWarner to start contracting with it for tax reasons. Nevertheless, none of these arguments suffice to show "as a matter of law" that the parties' agreements have one unambiguous meaning. *Est. of Barney*, 714 F.3d at 926 (citation omitted). Rather, the arguments merely confirm the ambiguity that exists on this question.

BorgWarner lastly points to a 2022 email from VCST's CEO suggesting that the terms in Addendum No. 1 continued to apply to the parties' relationship. Email, R.25-13, PageID 770. We see two hurdles to its reliance on this letter at this stage. For one thing, VCST's complaint did not attach the email to the complaint. And while the complaint made passing reference to the email, VCST's claims in no way "depend[]" on it. *Blackwell*, 123 F.4th at 487. So we may not consider the email when deciding a Rule 12(b)(6) motion. *See id.* For another thing, the email qualifies as the type of "extrinsic evidence" ("statements of [a party's] representatives") that courts may use only when a contract contains an ambiguity. *Klapp*, 663 N.W.2d at 454 (citation omitted). If anything, then, BorgWarner's reliance on the email confirms that the parties' agreements do not unambiguously identify which forum-selection clause applies.

One final point. BorgWarner asks us to affirm the district court on the alternative ground that the forum non conveniens doctrine points to a Mexican venue. But the same factual dispute that dooms the Rule 12(b)(6) motion also dooms this alternative request at this stage. Courts must generally give controlling weight to a valid forum-selection clause under the forum non conveniens doctrine. *See Atl. Marine Constr.*, 571 U.S. at 62–63. So the factual question whether the BW Mexico Terms or the BW U.S. Terms apply to VCST's breach-of-contract claims will play an equally critical role to the district court's resolution of the forum non conveniens motion.

\* \* \*

We will leave open for the district court how to resolve these factual disputes on remand. As the Supreme Court suggested, though, the district court may have "sensible reasons" to consider resolving the disputes through the forum non conveniens doctrine. *Id.* at 61 n.4. If the court treats the forum-selection clause as an affirmative defense, it may well have to proceed through the normal litigation process. That treatment could include a "jury trial" if factual disputes remain at the summary-judgment stage. *Id.* In other circuits, by contrast, district courts typically resolve on their own the factual disputes that underlie a motion to dismiss on forum non conveniens grounds. *See Martinez*, 740 F.3d at 216–17. The parties have not briefed these issues in our court. So the proper procedural path remains in the district court's capable hands.

We reverse and remand for proceedings consistent with this opinion.